VICTORIA SCOTT ET AL., APPELLANTS, V. JOSEPH MICEK ET AL., APPELLEES.

FILED MARCH 28, 1910. No. 15,950.

1. Witnesses: COMPETENCY. Testimony of defendant Joseph Micek, examined and set out in the opinion, *held* not within the inhibition of the provisions of section 329 of the code.

2. Cancelation of Instruments: EVIDENCE. Evidence examined and set out in the opinion, *held* amply sufficient to sustain the findings and decree of the district court.

APPEAL from the district court for Platte county: GEORGE H. THOMAS, JUDGE. *Affirmed.*

*W. N. Hensley* and *Sullivan, Reeder & Lightner,* for appellants.

*McAllister & Cornelius, contra.*

FAWCETT, J.

Plaintiffs, as children and heirs of Mary Micek, deceased, brought suit in the district court for Platte county to cancel two deeds to outlot number 3 in the city of Columbus, and from a decree dismissing their suit they prosecute this appeal.

The petition alleges that Mary Micek died intestate, in Platt county, on or about February 24, 1903, leaving plaintiffs as her children and only heirs at law; that defendant Joseph Micek is their father; that at the time of her death their mother was the owner and in possession of said lot and had been in possession thereof for three years prior to her decease; that on or about October 1, 1900, the said Mary Micek entered into a contract with the defendant Paprocki, whereby said defendant agreed to sell and convey said lot to her for the sum of $300, to be paid in monthly payments, conveyance to be made upon final payment; that said Mary Micek made all of the payments to defendant Paprocki, and within a day or so after making the final payment, and before a deed was executed and delivered to her, she died; that no administration was was ever had on her estate; that she left no debts; that within a few weeks after the death of said Mary Micek, defendant Joseph Micek intermarried with the defendant Tekla Micek, who at said time was a widow with a large family of children by a former marriage; that shortly after the marriage of defendants Joseph and Tekla Micek they entered into a conspiracy with the defendant Paprocki to cheat and defraud plaintiffs out of their inheritance from their said mother, and as a result thereof said Paprocki and his wife executed a deed for said lot to defendant Joseph Micek, without any consideration whatever, in fraud of plaintiff's right; that all of said parties

at said time had full notice and knowledge that plaintiffs were the equitable owners of said property, and were entitled to a conveyance thereof; that on or about May 1, 1908, the defendants Joseph and Tekla Micek, in further-ance of their fraudulent scheme, executed and delivered a deed of said lot to the defendants Jacob and Mary Chilocha, for the express consideration of $1,200, "but plaintiffs charge on information and belief that no con-sideration whatever was paid for said conveyance; that the defendants Jacob and Mary Chilocha had full notice and knowledge of plaintiffs' rights to said property, and that said conveyance is colorable only and was made for the purpose of eventually vesting the title in the defend-ant Tekla Micek"; that the said deeds from defendant Paprocki to defendant Joseph Micek and from the de-fendants Joseph and Tekla Micek to the defendants Jacob and Mary Chilocha have all been recorded in the office of the county clerk of Platte county, and cloud plaintiffs' title to said land. Plaintiffs pray that both of said deeds be canceled of record, and that plaintiffs be decreed to be the owner of said land, and for general relief.

Defendants Joseph and Tekla Micek for their separate answer admit the death of Mary Micek and the relation-ship of the parties, and deny all other allegations in plaintiffs' petition. They further allege that defendant Joseph Micek furnished the money to pay for said lot; that he was also the owner of outlots 1 and 2, and was in possession of all of said outlots; that in May, 1908, he sold said outlots 1, 2 and 3 to the defendants Jacob and Mary Chilocha for the sum of $1,200, "as he had a legal right to do."

Defendants Jacob and Mary Chilocha for their separate answer alleged that they have no knowledge or informa-tion whereon to form a belief as to the matters stated in plaintiffs' petition, and therefore deny each and every allegation therein contained. They especially deny plain-tiffs' allegations in relation to their purchase of the lot from defendant Joseph Micek, and allege the fact to be

"that said defendants purchased outlots one, two and three to the city of Columbus, Neb., from the defendant Joseph Micek, paying a full consideration therefor, for their own use and benefit, and without any knowledge that the plaintiffs had any interest therein."

Defendant Paprocki for his separate answer denies each and every allegation in plaintiffs' petition. The replies to the separate answers of the defendants Micek and the defendants Chilocha are general denials. The court found the issues generally in favor of the defendants, and "further finds that defendant Joseph Micek is a competent witness in this cause as to all testimony given by him on the trial thereof, and that his evidence should be and is considered by the court."

But two questions are seriously pressed for consideration on this appeal: (1) Was defendant Joseph Micek a competent witness under section 329 of the code? (2) Does the evidence sustain the findings and decree of the court?

The main testimony offered by plaintiffs was given by plaintiff Victoria Scott, a married daughter of the deceased. She testified that their mother died in February, 1903; that she made the last payment upon the property in her bedroom while "she was lying sick in bed", and that "she died shortly after making this last payment." On cross-examination, however, she fixes the date of this last payment in the month of October prior to her mother's death. She also testified that after her mother's death her father on a number of occasions said that he had no right to sell the lot in controversy, that it would be for the children after his death; but on cross-examination, when asked if she did not know that he was offering it for sale, prior to the time he sold it, she answered: "He used to speak about selling it, but he never sold it. He said it was worth more; that they only offered him so and so much for it." When asked on direct examination where her mother got the money to pay for the lot, she answered: "Well, she had grain, she sold grain for it, and she had a

hired girl and she took in washing, she and this lady did, and she had another woman there, and she raised hogs and potatoes, and she saved all her money and paid for it. She paid some of it before she got sick by taking in washing, and afterwards she took in cattle for pasture, and she got quite a bit of money that way, and they raised a lot of hogs and calves and such as that, and she saved every dollar." On cross-examination she was asked where her mother got the grain she sold to raise money. "A. She owned land. Q. Where? A. Why, down here by the B. & M. bridge there was one 80 acres and down here by the river. Q. Wasn't that land in your father's name? A. That didn't cut any figure. She paid the hired help to work the land, and my brother worked it. Q. That land was in your father's name? A. It was in Mr. Schwarz's name. He had the papers to that land. Q. Was that land not sold for a debt of your father's, finally? A. Father sold it after mother died. I guess he had a right to it."

Some attempt was made by the testimony of plaintiff Frank Micek to prove notice to the Chilochas, before they obtained the deed, of the interest which plaintiffs were claiming in the land. The deed from the Miceks to the Chilochas was made and delivered in the office of Becher, Hockenberger & Chambers, in the city of Columbus. Frank testifies that he went into the office at the time his father and stepmother and the Chilochas were there; that they were all in the front room; that he called Mr. Hockenberger into a little closet and told him "to not make any deal with my father; that he had no right to sell that land; and then he took him over to Mr. Chambers, and he told him that the deed was made in my father's name and we couldn't do anything, so I didn't say any more." He gives it as his judgment that the Chilochas must have heard the conversation. The deal was consummated, however, and the deed made, Frank signing as a witness to its execution.

Defendant Joseph Micek testified that he bought the

lot in question, agreeing to pay therefor the sum of $325, and $25 for the fence, making a total of $350; that he paid $100 down; that defendant Paprocki furnished the balance of the money and took a deed to the property, and that he subsequently paid the balance of the purchase price to Paprocki. He denies the testimony of Mrs. Scott as to his saying that he could not sell the land, and testifies that he had been talking about selling it for six months before he finally made the sale; that he told his children that he was going to sell it, and they never objected to his doing so; that he was in possession of the land all the time from the time he first paid the $100 until he sold it to the Chilochas; that he kept up the fences; that he made all the payments that were made and also paid for the fence; that Mary Micek never paid any of her money on that property. He also produced and introduced in evidence a receipt from Paprocki for the last $225, dated April 26, 1902. When asked why he did not receive a deed after the final payment of $225 until after the death of his wife, he answered that "time was flying away and he just kept putting it off." He testifies that he earned the $225 with his team working on the Burlington and Union Pacific railroads; and that he is still the owner of the two notes for $500 each, given him by the Chilochas as part payment for the lots.

Defendant Paprocki, called as a witness by plaintiffs, testified that, when the payments were made to him from time to time, Joseph and Mary Micek were both present; that they never did anything but what they both knew about. He was asked this question, through an interpreter: "Q. How does it come that you made the deed to Joe Micek after Mary's death, when Mary had paid the money?" To which he answered that he "was keeping that deed; that deed was ready for him, but there was something like $3 that was held back, and he didn't give that deed; that was the interest, the $3; * * * that was after the death of Mrs. Micek. He says that she was sick for nearly a year, and there was no one inquiring for the

deed." He further testified that "Mrs. Micek was the one that paid him the money, but they were always both there. He says that Micek never carried any money with him; the old lady always carried the money."

Mr. Chilocha testified that he bought the three lots from Joseph Micek for $1,200; that he paid him $200 in cash and gave him two notes aggregating $1,000, one due in six months, and the other in one year; that at the time he purchased the property he did not know that the plaintiffs claimed any right in it; that he saw Frank Micek in the office the day they bought the property, but that he did not hear what he said to Mr. Hockenberger at that time. He says: "I swear positively I did not hear what business he had there." Mrs. Chilocha testified that she saw Frank Micek in the office at the time they obtained the deed from Micek, but that she did not hear anything that Frank said to Mr. Hockenberger.

Without further reviewing the evidence in detail, we think it conclusively establishes these facts: That Joseph and Mary Micek, with their children, were living together, using the lot in controversy, together with outlots 1 and 2, as their homestead; that Mrs. Micek was the custodian of the family fund; that whenever they transacted business the husband and wife went together, and that when payments were to be made Mary would produce the money out of this fund, but always with the sanction, if not under the express direction, of the husband; that the grain and other farm products which were sold were raised upon the land, the title to which was in Joseph; that the proceeds of Joseph's earnings with his team, working on the grades of the railroad companies referred to, went into the family fund. That this fund was subject to Joseph's control there can be no doubt. That Mary ever earned any of the money that went to pay for the lot is not established by any satisfactory testimony. Mrs. Scott and one of the sons testified in a general way that she earned the money and made the payments, but they did not specify any amount that she ever

raised, nor the amount of any payment she ever made, except the one item of about $30 which Mrs. Scott says she paid in October, 1902. This testimony we think is strongly controverted by the receipt offered in evidence which shows that the final payment, except a small balance of $3 for interest, was made in April, 1902, six months prior to the time Mrs. Scott says her mother made the final payment of $30. If Joseph was a competent witness to testify to the facts above set out, there can be no question as to the correctness of the court's findings. That he was a competent witness to testify to those facts is clear. He does not attempt to testify to any conversation or transaction had with his wife during her lifetime. His entire testimony is as to transactions had with Paprocki and other third parties, so that there is nothing to bring him or his testimony within the provisions of section 329 of the code. A consideration of the authorities cited by counsel for plaintiffs upon that point would be fruitless. It is also unnecessary to consider the question as to whether the defendants Chilocha sufficiently pleaded the defense that they were *bona fide* purchasers. If Joseph Micek purchased the property in controversy and paid for it out of his own money, he was entitled to convey it in any manner and to whomsoever he saw fit.

Finding no error in the record, the judgment of the district court is

AFFIRMED.

LETTON, J., not sitting.